## CIRCUIT COURT OF LOUDOUN COUNTY

Seville Investments Corp.

v.

Loudoun County
and Loudoun County
Planning Commission

April 17, 2002

Case No. (Law) 20326

BY JUDGE JAMES H. CHAMBLIN

This cause came before the Court on March 25, 2002, on the Demurrer and Plea in Bar of the County of Loudoun and the Loudoun County Planning Commission to the Bill of Complaint filed by Seville Investments Corporation ("Seville"). For the reasons hereinafter set forth, the Demurrer is sustained in part and overruled in part, and the Plea in Bar is overruled.

### Allegations Contained in the Bill of Complaint

In March 2000, Seville submitted a preliminary subdivision plat pursuant to the Loudoun County Land Subdivision and Development Ordinance ("LSDO") for Westport, Section 1. The property is zoned CR-1 (Countryside Residential-1). The proposed use is a cluster development option under Section 2-506 of the Zoning Ordinance of Loudoun County.

By letter dated July 18, 2000, Michael Seigfried, Chief Planner, Loudoun County Department of Building and Development, advised Seville, as follows:

Under further staff review of the above referenced preliminary plat of subdivision application, it has been determined that this property is located in an area designated as "rural" within the Dulles South Plan Area.

Based upon the current adopted policies, public utilities are not to be extended into the rural area at this time. Section 2-507(G) of the *1993 Loudoun County Zoning Ordinance* states "both public water and public sewer facilities must be provided to the site in accord with the water and wastewater policies of the comprehensive plan." Prior to proceeding with the application, it will be necessary to demonstrate compliance with the section of the zoning ordinance. If you cannot demonstrate compliance, please withdraw the application.

After addressing staff comments in an earlier letter, Seville submitted a revised preliminary plat on July 31, 2000.

By letter dated August 11, 2000, Terrance D. Wharton, Director of the Loudoun County Department of Building and Development, informed Seville that the preliminary subdivision application was denied. His letter lists eight reasons for denial. Five reasons pertain to the Facilities Standards Manual (FSM). One reason pertains to the LSDO. The other two reasons, numbers 7 and 8, involve the Zoning Ordinance as follows:

7. The application does not comply with Section 2-506(G) of the *1993 Loudoun County Zoning Ordinance*. This Section of the Zoning Ordinance requires that public sewer facilities be provided to the site in accord with the wastewater policies of the Comprehensive Plan. The application proposes service by the extension of central utilities into an area not currently planned by these facilities. The application may be modified as indicated in item 6 of this letter.

8. The application does not comply with Section 6-1101(A) of the *1993 Loudoun County Zoning Ordinance*. A Commission Permit is required for the extension of public utilities to this portion of the County and no such application has been applied for and granted by the Planning Commission. (See the attached memorandum from the Department of Planning.) The application may be modified as indicated in item 6 of this letter.

The reason stated as item 6 is as follows:

6. The application fails to comply with Section 8.102(B) of the FSM. The April 20, 2000, letter from the Loudoun County Sanitation Authority (LCSA), which you submitted, states that LCSA utilities cannot be provided to this site under current policies. As an alternative, you may wish to submit an application serving the lots with onsite well and septic systems in accordance with Section 2-505 of the *1993 Loudoun County Zoning Ordinance*. As a second alternative, you may submit an application for a Countryside Hamlet under Section 2-503(J) of the *1993 Loudoun County Zoning Ordinance* utilizing an onsite communal wastewater system. Please note that both of these alternatives will require compliance with Section 8.102(B)(1) of the FSM.

Westport is located in the Dulles South Area Management Plan (DSAMP) area of Loudoun County. DSAMP is a part of the comprehensive plan for Loudoun County. The Bill of Complaint mentions 1997 amendments to DSAMP, but only asserts legal conclusions as to the effect of such amendments.

A map styled "Dulles South Planning Area Current LCSA Sewer Plans" and denoted as Figure 5 on page 23 of DSAMP shows a gravity sewer line planned by the County and the Loudoun County Sanitation Authority ("LCSA") at the Westport site.

DSAMP states:

[S]oils in the Dulles South planning area are generally unsuited for development on septic systems and wells due to a high water table, shallow depth to bedrock, and clayey shrink-swell characteristics. Residential development at a suburban scale or even at rural scale (one unit per three acres) and non-residential development that would require on-site facilities are nearly impossible in most of the planning area due to these soil limitations and public health standards regulating septic fields and wells. From a public health standpoint, new residential development at suburban or urban development densities would need some sort of public sewer and water service.

*Id.* at p. 20.

The soils at Westport are similar to those described in DSAMP. Loudoun County Health Department records indicate that homes located on the Westport property are not suitable for habitation due to failed sewage disposal systems.

The denial letter of August 11, 2000, also stated:

Pursuant to Section 1242.04(4) of the LSDO, an appeal may be made to the Board of Zoning Appeals (BZA) with respect to determinations in paragraphs 7 and 8. An appeal of the final action on this application may be made to the Planning Commission in accordance with Section 1242.04(2)(a) of the LSDO.

Seville filed an appeal to the BZA.

Seville also filed an appeal to the Loudoun County Planning Commission, which can affirm or reverse the denial of the application under § 1242.04(2)(a) of the LSDO. As to this appeal, the Bill of Complaint alleges that Seville, "through its engineer, responded to all outstanding technical comments, thus satisfying all conditions to plat approval. Notwithstanding the submission of this revised plat satisfying the conditions to preliminary approval under the LSDO, the appeal was denied by the Planning Commission...."

Seville asserts that "disapproval of the subdivision application was not properly based on the ordinance applicable thereto or was arbitrary and capricious."

On October 10, 2000, Seville filed its Bill of Complaint seeking the following relief:

(1) On its appeal under Va. Code § 15.2-2260, a judgment ordering that the preliminary plat is approved, or, in the alternative, directing the Defendants to approve it.

(2) On its prayer for a declaratory judgment, a judgment that the attempt by the Defendants to incorporate the comprehensive plan into the LSDO's ministerial subdivision process through the Zoning Ordinance is illegal, arbitrary, capricious, ultra vires, and violative of the Dillon Rule.

(3) A temporary and permanent injunction enjoining the Defendants from an attempt to incorporate the comprehensive plan into the LSDO's ministerial subdivision process through the Zoning Ordinance for the reasons cited in (2) above, or asserting in this or subsequent applications for the Westport subdivision under its CR-1 zoning that the comprehensive plan has been incorporated into the LSDO's ministerial subdivision process through the Zoning Ordinance.

*Demurrer*

In their first ground for their Demurrer, the Defendants argue that the preliminary plat disapproved by the Director did not comply with all the

ordinance requirements. Therefore, there is no basis to reverse the decision of the Planning Commission, which affirmed the Director's disapproval. For their second ground, the Defendants assert that the Planning Commission had no authority to consider or approve the "revised plat" submitted to it by Seville.

The Defendants argue that, from the facts alleged in the Bill of Complaint, the only reasonable inference is that the preliminary plat disapproved by the Director in his letter of August 11, 2000, did not meet the requirements of the LSDO, the FSM, and the Zoning Ordinance. By submitting the "revised plat" to the Planning Commission, the Defendants assert that Seville admits that the Director could not have approved the preliminary plat submitted to him.

Seville requests in Count One (appeal pursuant to Va. Code § 15.2-2260) a judgment "that the preliminary plat is approved" or "directing the Defendants to approve it." It is not clear whether "preliminary plat" refers to the plat disapproved by the Director or the "revised plat" submitted to the Planning Commission. In paragraph 17 of the Bill of Complaint, Seville alleges that the "disapproval of the subdivision application" was improper. Also, Seville alleges that the "revised plat" responded to technical comments. I think that, for purposes of the Demurrer, it is not a fair inference that the plat submitted to the Director did not comply with all the ordinance requirements. However, this does not mean, as explained below, that Seville can seek approval of the "revised plat" submitted to the Planning Commission.

Section 1242.04 of the LSDO concerns "*Appeals and Petitions.*"

Section 1242.04(2)(a)(i) of the LSDO provides, in pertinent part, as follows:

> If the Director disapproves a preliminary plat, of subdivision … and the subdivider contends that such disapproval or denial or condition was not properly based upon this ordinance, or was arbitrary or capricious, the subdivider may appeal such disapproval or conditional approval or denial to the Planning Commission....

Section 1242.04(2)(a)(ii) of the LSDO provides, in pertinent part, "The Commission shall review the preliminary subdivision only for the appeal issues as related to conformance with this ordinance."

Section 1242.04(2)(a)(iii) of the LSDO provides:

> The action of the Commission on the appeal shall be substituted for the decision of the Director and shall be deemed final. Nothing herein shall be interpreted to preclude the subdivider from pursuing an appeal to the Circuit Court in accordance with the provisions

contained in the Virginia Code, nor to preclude the subdivider from submitting a new preliminary subdivision application for the same development or property if no appeal is pending. If such final action of the Commission is appealed to the Circuit Court, the Court shall hear and determine the case as soon as may be, provided that such appeal has been filed with the Court within sixty (60) days after the final action of the Commission.

Section 1243.08 of the LSDO concerns "*Action on Preliminary Plan*" by the Director. Section 1243.08(1)(a) provides, in part, as follows:

A disapproval of the plat may be appealed to the Planning Commission in accordance with the provisions of Section 1242.04. Nothing herein shall be interpreted so as to preclude the subdivider from filing a new preliminary plat of subdivision for the same property if no appeal to the Circuit Court is pending.

Va. Code § 15.2-2260(E) provides:

E. If a commission or other agent disapproves a preliminary plat and the subdivider contends that the disapproval was not properly based on the ordinance applicable thereto or was arbitrary or capricious, he may appeal to the circuit court having jurisdiction of such land and the court shall hear and determine the case as soon as may be, provided that his appeal is filed with the circuit court within sixty days of the written disapproval by the commission or other agent.

Seville argues that the LSDO allows a subdivider to submit a revised plat directly to the Planning Commission pending an appeal of the disapproval of a preliminary plat by the Director; and, further, if the Planning Commission does not approve the revised plat, then the subdivider can appeal the disapproval by the Planning Commission to this Court. I do not agree.

Section 1242.04(2)(a)(i) of the LSDO concerns the appeal of the Director's disapproval to the Planning Commission. It states that if "*the Director* disapproves a preliminary plat ... the subdivider may appeal *such disapproval* ... to the Planning Commission.*" (Emphasis supplied.) Further, Section 1242.04(2)(a)(ii) provides that the Planning Commission reviews "the preliminary subdivision *only for the appeal issues* as related to conformance with this ordinance." (Emphasis supplied.) Also Section 1242.04(2)(a)(iii)

states that the "action of the Commission *on appeal shall be substituted for the decision of the Director....*" (Emphasis supplied.)

The foregoing ordinance provisions clearly deal only with an appeal to the Planning Commission of the Director's disapproval of the preliminary plat submitted to the Director. On appeal, the Planning Commission is concerned only with the preliminary plat that was disapproved by the Director. The ordinance provisions do not give the Planning Commission the authority to consider on appeal any plat other than the preliminary plat disapproved by the Director.

Seville argues that the provisions of § 1242.04(2)(a)(iii), which states that "nothing herein shall be interpreted to preclude the subdivider from pursuing an appeal to the circuit court ... nor to preclude the subdivider from submitting a new preliminary subdivision application for the same development or property if no appeal is pending," allows it to submit a revised plat to the Planning Commission during the appeal. It also cites similar language from § 1243.08(1)(a), which provides that "nothing herein shall be interpreted so as to preclude the subdivider from filing a new preliminary plat of subdivision for the same property if no appeal to the Circuit Court is pending." I do not think these provisions support Seville's argument.

A preliminary subdivision plat is initially submitted to the Director for review. See, Va. Code § 15.2-2260 and Chapter 1243 of the LSDO. After the review process involving staff and referral agencies, the Director decides whether to approve the preliminary plat.

If the Planning Commission had the authority on appeal under Section 1242.04(2)(a) to consider and approve a preliminary plat never submitted to the Director for review, then the whole review process could be avoided. The review process is essential to assure ordinance compliance.

To allow the Planning Commission on an appeal to consider and approve a preliminary plat that was never the subject of staff or referral agency review would be absurd. Carried to its extreme, a subdivider could submit a preliminary plat that is clearly deficient, have it disapproved, and then appeal to the Planning Commission and hope to convince a majority of its members to vote to approve the plat. Ordinances should not be construed to permit absurd results.

To avoid an absurdity, I think that the portions of § 1242.04(2)(a)(iii) and § 1243.08(1)(a) cited above can, and should be, construed to allow a subdivider to submit or file a new preliminary plat with the Director, even if there is an appeal pending of the disapproval of a prior preliminary plat, if no appeal to the Circuit Court is pending. If the Board of Supervisors had wanted the Planning Commission to have the authority on appeal to consider and

approve or disapprove a plat other than the preliminary plat disapproved by the Director, then it would have specifically included language in the ordinance to that effect. It did not do so.

I find that, as a matter of law, in an appeal pursuant to § 1242.04(2)(a) of the LSDO, the Planning Commission has no authority to consider and approve or disapprove any plat other than the preliminary plat disapproved by the Director. Therefore, the only plat which can be the subject of an appeal to this Court under Va. Code § 15.2-2260(E) and § 1242.04(2)(a)(iii) of the LSDO is the preliminary plat that was disapproved by the Director.

For the reasons stated above, Seville is not entitled to a judgment that the "revised plat" be approved.

Accordingly, the Demurrer is overruled on the first ground asserted by the Defendants, but sustained on the second ground. As the second ground involves merely a matter of law, no leave to amend is granted to Seville.

As a third ground for their Demurrer, the Defendants assert that Seville failed to exhaust all administrative remedies. This argument is based on the failure of Seville to allege that it timely appealed under Va. Code § 15.2-2311 the decisions stated in the letter of July 18, 2000, and the memorandum dated August 10, 2000, attached to the Director's denial letter dated August 11, 2000, to the Board of Zoning Appeals ("BZA"). If a mandatory appeal is not timely filed, the administrative remedy has not been exhausted and any decision of the zoning administrator becomes a "thing decided" not subject to a court challenge. *Dick Kelly Enter. v. City of Norfolk*, 243 Va. 373, 378 (1992).

Subsection A of Va. Code § 15.2-2311 provides:

A. An appeal to the board may be taken by any person aggrieved or by any officer, department, board, or bureau of the locality affected by any decision of the zoning administrator or from any order, requirement, decision, or determination made by any other administrative officer in the administration or enforcement of this article or any ordinance adopted pursuant thereto. Notwithstanding any charter provision to the contrary, any written notice of a zoning violation or a written order of the zoning administrator dated on or after July 1, 1993, shall include a statement informing the recipient that he may have a right to appeal the notice of a zoning violation or a written order within thirty days in accordance with this section, and that the decision shall be final and unappealable if not appealed within thirty days. The appeal period shall not commence until the statement is given. The appeal shall be taken within thirty days after

the decision appealed from by filing with the zoning administrator, and with the board, a notice of appeal specifying the grounds thereof.

(Emphasis supplied.)

Seville does not allege that it appealed the July 18, 2000, zoning determination to the BZA. However, it does argue that, because the letter does not contain the appeal statement required by Va. Code § 15.2-2311(A), the appeal provisions do not apply, or, at least, the appeal period has not commenced.

From the Defendants' perspective, the July 18, 2000, letter is crucial. Seville's preliminary subdivision plat is based on the "Public Sewer/Cluster Option" of § 2-506 of the Zoning Ordinance, which allows such cluster development in a CR-1 zone if public sewer facilities are provided to the site in accord with the wastewater policies of the Comprehensive Plan. The July 18, 2000, letter purports to be a determination by the Chief Planner, not the Zoning Administrator, that public utilities are not to be extended into the rural area where Westport is located. If that were true, then, under the Defendant's theory, Seville would not be able to subdivide in the proposed cluster development because public sewer facilities are not provided.

But the July 18, 2000, letter does not state that Seville cannot subdivide the property as proposed in the preliminary plat. It merely informs Seville that it must demonstrate compliance with § 2-507(G) of the Zoning Ordinance before proceeding with the application. The July 18, 2000, letter cites the wrong zoning ordinance section. Seville's preliminary plat comes under cluster development option § 2-506 of the Zoning Ordinance, while the July 18, 2000, letter refers to § 2-507(G), which deals with the compact cluster development option. The Defendants' alleged "thing decided" is based on the wrong section of the Zoning Ordinance.

Further, item 7 of the disapproval letter dated August 11, 2000, is a reason for disapproval identical to the analysis in the July 18, 2000, letter, except that the correct zoning ordinance section is stated. It also contains a statement that an appeal may be made to the BZA as to Item 7.

The Defendants argue that no appeal statement is required by Va. Code § 15.2-2311(A) in the July 18, 2000, letter because it is not a "written notice of a zoning violation or a written order of the zoning administrator." If such an interpretation of § 15.2-2311(A) does not mandate the appeal statement for the July 18, 2000, letter, then it would also not be required for Item 7 of the August 11, 2000, disapproval letter, yet such an appeal statement is included in it. I think that the Defendants' argument that the appeal notice statement is not required for the July 18, 2000, letter is a little disingenuous. If the County felt it was necessary

for the August 11, 2000, disapproval letter to contain the appeal notice statement, then it should also have been included in the July 18, 2000, letter.

Even if it is assumed that the July 18, 2000, letter is a determination appealable under § 15.2-2311(A), for purposes of the Demurrer, I find that the inclusion of the appeal notice statement in the August 11, 2000, disapproval letter precludes the Defendants from arguing that the appeal notice was not required for the July 18, 2000, letter. Because the appeal notice statement was not included in the letter of July 18, 2000, under § 15.2-2311(A) the appeal period commenced, if at all, when the appeal notice statement was given in the August 11, 2000, letter, which was timely appealed.

For purposes of the Demurrer, I find that the County cannot take advantage of the failure to include the appeal notice statement the first time the determination is made, when it includes the appeal notice statement the second time the very same determination is made.

As to the argument that Seville failed to timely appeal the determinations set forth in the memorandum dated August 10, 2000, because it only appealed the disapproval letter of August 11, 2000, I again feel that the Defendants are being a little disingenuous. The memorandum was attached to the disapproval letter. Whether the letter and the memorandum are separate and distinct matters for appeal is an issue of fact to be developed at trial. The Bill of Complaint sufficiently alleges that the Director's denial was appealed and that the reasons for the denial are stated in the August 11, 2000, letter. One of the reasons set forth in the letter for the denial specifically refers to the attached memorandum. For purposes of the Demurrer, the Memorandum dated August 10, 2000, is considered to be a part of the disapproval letter of August 11, 2000.

For the foregoing reasons, the Demurrer is overruled on the ground of failure to exhaust administrative remedies.

As a fourth ground for their Demurrer, the Defendants assert that the County and the Planning Commission may consider the comprehensive plan when reviewing subdivision requests that require the establishment, construction, extension, and/or dedication of public utilities such as water and sewer.

This ground concerns one of the significant, if not the most significant, issues in this case. Seville seeks to subdivide its property in a by-right cluster development as allowed in a CR-1 zone under § 2-506 of the Zoning Ordinance. One of the requirements of this cluster option is set forth in subsection G as follows:

> *Utilities*. Public sewer facilities must be provided to the site in accord with the wastewater policies of the Comprehensive Plan.

The property is located in the Dulles South area, one of several planning areas of Loudoun County under its comprehensive plan. DSAMP prior to the 1997 Amendments states that it is the policy that the entire Dulles South area is planned for central sewer and water service. The 1997 DSAMP Amendments contain as a policy statement the following:

> The area west of the interim planning area boundary shall be governed by the Rural Areas Policies of the General Plan until such time as the Board of Supervisors adopts an amendment to the DSAMP that provides for new land development policies for this area. The County anticipates serving the western area with central water and sewer facilities in the future.

Policy 25 of the 1997 DSAMP Amendments.

The property is located west of the interim planning area boundary. The General Plan prohibits the extension of central water and sewer service to "rural areas" except in limited circumstances that do not apply to the property. Under this policy, the property could not be served by central water and sewer at the time the preliminary plat was disapproved. This is the reason set forth in Item 7 of the Director's letter of August 11, 2000, for disapproving the preliminary plat.

Seville argues that the County cannot legally incorporate the comprehensive plan into the ministerial subdivision process. Put another way, Seville asserts that the CR-1 zoning classification allows the proposed subdivision to be served by public water and sewer without any discretionary approval by the County.

To sustain the Demurrer on this ground, I would have to rule that, under the facts alleged, the County is permitted to utilize its comprehensive plan (which is merely a guide or plan but not law) to establish under the Zoning Ordinance (which is law) one of the requirements for a permitted, by-right cluster option for a subdivision in specific zoning classification.

I do not think that such a ruling should be made at the demurrer stage. It is best reserved for a resolution on the merits.

The Demurrer is, therefore, overruled on this ground.

The fifth ground relates closely to the fourth ground. The Defendants assert that Seville cannot attack the utilities requirement of § 2-506 permitted cluster option subdivisions in a CR-1 zone because it is part of the very provision upon which Seville relies to obtain its proposed use.

For the same reason that the Demurrer is overruled on the fourth ground, it is overruled on this ground as well.

The sixth ground for the Demurrer involves the failure of Seville to allege that approval has been obtained from the Planning Commission to extend public water or sewer service west of the interim planning area boundary where the property is located.

Va. Code § 15.2-2232 provides that public utility facilities cannot be constructed, established, or authorized unless they are already a feature shown on the comprehensive plan or the local planning commission determines that such facilities are already substantially in accord with the comprehensive plan. The County has implemented this Code provision in § 6-1101 of the Zoning Ordinance, which provides:

(A) No street or connection to an existing street, park or other public area, public building or public structure, public utility facility, or public service corporation facility other than a railroad facility, whether publicly or privately owned, shall be constructed, established, or authorized, unless and until the general location or approximate location, character, and extent thereof has been submitted to and approved by the Planning Commission as being substantially in accord with the adopted Comprehensive Plan.

(B) Widening, narrowing, extension, enlargement, vacation, or change of use of streets or public areas shall be submitted for approval, but paving, repair, reconstruction, improvement, drainage, or similar work and normal service extensions of public utilities or public service corporations shall not require approval unless involving a change in location or extent of a street or public area.

(C) Any public area, facility or use which requires a permit under (A) above which is identified within, but is not the entire subject of, an application for approval of subdivision or site plan or both may be deemed to be a feature already shown on the Comprehensive Plan if the County has defined standards governing the construction, establishment, or authorization of such public area, facility, or use or has approved it through acceptance of a proffer made pursuant to Section 6-1209. In such case, application for a commission permit is not necessary.

(D) Application for a commission permit is not necessary in such instances where the public area, facility, or use is deemed to be a feature already shown on the Comprehensive Plan.

In Item 8 of the Director's disapproval letter dated August 11, 2000, the reason for disapproval is cited as the failure of Seville to apply for and obtain

a permit from the Planning Commission for extension of public utilities to serve the property.

Seville argues that a commission permit is not needed because the extension of public utilities to serve Westport would be a "normal service extension" under Va. Code § 15.2-2232(C), which provides:

> C. Widening, narrowing, extension, enlargement, vacation, or change of use of streets or public areas shall likewise be submitted for approval, but paving, repair, reconstruction, improvement, drainage, or similar work, and *normal service extensions* of public utilities or public service corporations shall not require approval unless involving a change in location or extent of a street or public area.

(Emphasis supplied.)

Or it argues that it would be a public facility "identified within, but not the entire subject of, a submission" under Va. Code § 15.2-2232(D), which provides:

> D. Any public area, *facility*, or use as set forth in subsection A *which is identified within, but not the entire subject of, a submission* under either § 15.2-2258 for subdivision or provision 8 of § 15.2-2286 for development or both may be deemed a feature already shown on the adopted master plan, and, therefore, excepted from the requirement for submittal to and approval by the commission or the governing body; provided that the governing body has by ordinance or resolution defined standards governing the construction, establishment, or authorization of such public area, facility, or use or has approved it through acceptance of a proffer made pursuant to § 15.2-2303.

(Emphasis supplied.)

Parallel provisions are found in § 6-1101 of the Zoning Ordinance.

Further, Seville alleges that two figures of DSAMP which have never been amended show central utility service in the area of the property (Figures 4 and 5 of DSAMP) and that they are "features already shown" on the comprehensive plan. Hence, under Va. Code § 15.2-2232(A) and § 6-1101(C) and (D) of the Zoning Ordinance, a commission permit is not necessary.

I think that such issues as whether a utility extension is a "normal service extension" or whether a feature is already shown on the comprehensive plan are fact-driven and cannot be decided as a matter of law.

The Demurrer is overruled on this ground.

The seventh and eighth grounds are related to the first and second grounds. The Defendants merely assert that there are no facts alleged that show that the preliminary plat was denied in violation of Va. Code § 15.2-2260 and, as a result, they are not entitled to a declaratory judgment or injunction.

As alleged in the Bill of Complaint, Seville places the eight reasons for disapproval into two categories. The first includes Items 1 through 6 in the Director's disapproval letter of August 11, 2000. Seville alleges that these deficiencies have been corrected in the "revised plat" submitted to the Planning Commission. The other category includes the reason set forth in Items 7 and 8 of the letter. They are the anticipated extension of public utilities into an area not currently planned for them and the commission permit requirement.

As to the latter two reasons for disapproval, there is an antagonistic assertion and denial of right. They involve specific adverse claims. They are based on present facts. They affect the ability of Seville to utilize its property as allowed by law. There is an actual controversy. Declaratory judgment jurisdiction is appropriate.

The Demurrer is overruled on these two grounds for the same reason that it is overruled on the first ground.

The final ground of the Demurrer arises because in the prayer for relief for each count of the Bill of Complaint, which is styled as Seville Investments Corporation, formerly known as Seville Development Co., Inc., in the caption and first paragraph of the Bill of Complaint is named as "The Seville Development Company, Inc." The Defendants assert that, because of the name of the Complainant in the caption, it cannot request relief for the entity named in each prayer for relief. The Demurrer is overruled. The name set forth in the prayers is merely a clerical error. The Defendants are on notice from the allegations of the Bill of Complaint that Seville Investments Corporation, formerly known as Seville Development Co., Inc., is the entity seeking relief in this cause.

### Plea In Bar

The Plea in Bar sets forth four grounds, three of which are identical to grounds for the Demurrer. These three are addressed first.

The second ground is the same as the first ground of the Demurrer, it is not alleged that the preliminary plat complied with all ordinance requirements. Similar to the first ground of the Demurrer, this ground of the Plea in Bar is overruled.

The third ground is the same as the sixth ground of the Demurrer, the failure to allege that a commission permit was applied for and obtained. For reasons similar to those applicable to the sixth ground of the Demurrer, this ground of the Plea in Bar is overruled.

The fourth ground of the Plea in Bar is similar to the third ground of the Demurrer, failure to exhaust administrative remedies. For the same reasons applicable to the third ground of the Demurrer, this ground of the Plea in Bar is overruled.

In the first ground of their Plea in Bar, the Defendants assert that the preliminary plat should not have been lawfully accepted for review because the letter from the LCSA dated April 20, 2000, (Defendants' Exhibit 3 at hearing on March 25, 2002) did not confirm the availability of public water and sewer to serve the subdivision.

Section 8.102(B)(2) of the FSM provides:

The following items shall accompany the submission of a preliminary plat of subdivision....

2. If public water or public sewerage is to be provided, a letter shall be provided from the appropriate public authority *indicating that service can be provided.* Such letter may require that certain specifications be met as a condition to furnishing or operating public water or sewage.

(Emphasis supplied.)

The LCSA letter dated March 25, 2000, states in the two pertinent paragraphs:

Pursuant to your request concerning availability of public water and sanitary sewer for the referenced property, please be advised that the Sanitation Authority *could provide service* to this site through extensions of existing facilities.

However, this property is located within the interim planning area of the Dulles South Planning Area. While the County does anticipate service [of] this area with central water and sewer, it will be governed by the rural area policies of the General Plan until such time as the Board of Supervisors adopts an amendment to the Dulles South Area Management Plan. Therefore, the Sanitation Authority will abide by any decision made by the County relative to this matter.

(Emphasis supplied.)

I agree with the Defendants that an erroneous acceptance of the preliminary plat for review does not prevent the County from requiring compliance with the provisions of the subdivision ordinance. However, the other issues raised in this case may affect whether the Director can legally disapprove the preliminary plat because the County has adopted a policy not to extend public water and sewer into the area where Westport is located. These issues need to be decided after a trial on the merits, not upon a plea in bar. Further, I cannot, as to the Plea in Bar, rule as a matter of law that the LCSA letter does not meet the requirements of § 8.102(B) of the FSM. I do not think that it should be decided on a plea in bar whether "could provide service" is or is not the same as "service can be provided." Evidence of the surrounding circumstances needs to be developed.

The Plea in Bar is overruled on the first ground.

The grounds asserted in the Plea in Bar are matters of defense on the merits as opposed to narrow factual issues that may bar the claims set forth in the Bill of Complaint.